THE BOARD OF EDUCATION OF THE CITY OF POND CREEK OF THE TERRITORY OF OKLAHOMA, v. FRANCES BOYER *as County Superintendent of Public Instruction of Grant County.*

1. BOARD OF EDUCATION OF CITY OF FIRST CLASS—*Power to Attach Adjacent Territory.* The board of education of a city of the first class has authority, upon application to it by a majority of the electors of the adjacent territory, to attach such territory to the city for school purposes.

2. SAME—*Presumption as to Validity of its Acts.* Where a petition signed by persons who state that they are electors of the territory adjacent to a city is presented to the board of education of a city of the first class to have such adjacent territory attached to the city for school purposes, and the board acts upon the petition and orders the territory mentioned in the petition to be attached to the city for school purposes, and an entry is made of this action upon the journal of the board, the law presumes that the board of education made the order of attachment regularly, and made it only upon its being ascertained that the petition was signed by a majority of the electors of such adjacent territory, and this presumption stands as evidence of the fact until overcome by proof.

3. COUNTY SUPERINTENDENT—*No Power to Detach Territory from a City School District.* Where territory adjacent to a city of the first class has been duly attached to such city for school purposes, the county superintendent has no power to detach such territory, and attach it to another school district, and if she attempts to do so she may be enjoined from so doing by the board of education of the city district.

*Error from the District Court of Grant County.*

Action of injunction by plaintiff, board of education, against the defendant, county superintendent, to restrain her from detaching one-half section of land from the plaintiff's school district, and attaching it to an adjoining district. Judgment was had for the defendant, from which the plaintiff appeals. Reversed.

*W. H. Taylor*, for plaintiff in error.

*A. M. Mackey*, for defendant in error.

The opinion of the court was delivered by

BIERER, J.: On the twenty-first day of June, 1895, the plaintiff, board of education, instituted its suit in the district court of Grant county to enjoin the defendant in error, as county superintendent, from detaching the north half of section 11, township 25, north of range 6, west of the Indian meridan in Grant county, Oklahoma Territory, from the school district of the city of Pond Creek, which was school district No. 90, and attaching the same to an adjoining school district, No. 103, of said county.

The essential facts, as shown and undisputed, are that on the 14th day of November, 1893, the governor of the Territory of Oklahoma issued his proclamation, as authorized by law, incorporating the government townsite of Round Pond, the county seat of then "L," now Grant, county, as a city of the first class, under the name of the city of Pond Creek. In January, 1894, the county superintendent divided the county into one hundred and twenty school districts, forming district No. 90 from the territory covered by the city Pond Creek and the lands surrounding the same, within one-half mile thereof, and also extending a mile further on the north, to the Salt Fork of the Arkansas river. In this district, so formed, school district officers, consisting of director, clerk and

treasurer, were elected as for a country district. These officers qualified, opened schools, purchased furniture and supplies, employed teachers, and incurred an indebtedness amounting to $1,064. They subsequently resigned and the board of education of the city of Pond Creek became their successors, assumed the indebtedness of the district, and issued the warrants of the board of education therefor.

On the 22d day of September, 1894, a petition was presented to the board of education of the city of Pond Creek by persons who signed themselves as residents and electors of the territory requesting to be attached to the city of Pond Creek for school purposes, the petition giving their names, and the quarter section of land on which each resided. The petition asked that all the territory included within original district No. 90, and adjoining Pond Creek, be attached to the city of Pond Creek for school purposes. The territory asked to be attached to the city for school purposes comprised nineteen quarter sections, or fractional quarters of land, and was signed by sixteen different persons.

On the consideration of this petition, a majority of the members of the board being present on that day, as the record recites, "the petition of electors of adjacent territory to be attached to the city of Pond Creek for school purposes, was read by the clerk. On motion, the above-named territory was attached by unanimous vote of the board."

On the twelfth day of January, 1895, the defendant, county superintendent, made an order detaching the land now in controversy, to-wit: the north half of section 11, township 25, north of range 6, west, from the city school district, and attaching it to school district

number 103, lying to the south.   As shown by the map attached to the record, the city of Pond Creek cover- one-half section of land.   The northeast quarter of sec- tion 11 referred to adjoins the west half of Pond Creek on the south, and, of course, the northeast corner of the northwest quarter of section 11 is the southwest corner of the city of Pond Creek.

The board of education appealed from this order to the board of county commissioners of the county, and the order of the county superintendent was vacated.   On the twelfth day of June, 1895, the county superintend- ent made an order, on the application of homesteaders having entries on these two quarter sections of land, again detaching it from the school district of the city of Pond Creek, and attaching it to school district number 103.   This action was then brought to restrain the county superintendent from further proceeding to carry out such order, or detaching this land from the school district of the city of Pond Creek.

There is but one question necessary to be considered by us, that is:   Was the order detaching these lands from the city school district valid?   It is the direct question at issue and is answered by the consideration and determination of two other questions:

First.   When, under § 5832 of the school law of this territory, an order is made by the board of education of a city of the first class, on application to the board by the electors and residents of territory adjacent to the city to attach such territory to the city for school pur- poses, is it to be presumed that the petition was signed by a majority of the electors of such territory, or is the order to be held invalid unless it appears of record or is proven as a fact that the petition was signed by a major- ity of such electors?

Second. When territory adjacent to a city of the first class has been attached to such city for school purposes, has the county superintendent then power to make an order detaching such territory from the city school district?

We proceed to the determination of these questions in their order:

The board of education of the city of Pond Creek had the power to attach all the lands named in the petition to it to the city for school purposes if the petition was signed by a majority of the electors of such territory, although a part of the land did not immediately adjoin the city limits, the lands being a part of the entire body attached to the city for school purposes. (*School District No. 74, Kingfisher County, v. Long,* 2 Okla. 460).

A petition was presented to the board, setting out and describing the lands asked to be attached, which petition included the land in controversy. This petition was signed by numerous persons who stated that they were electors of this adjacent territory. The board acted upon the petition and made an order attaching the territory named in the petition to the city of Pond Creek for school purposes.

It is stated in the brief of plaintiff in error that the district court rendered judgment against the plaintiff for the reason that the journal of the board of education did not show that there had been evidence produced before the board to prove that this petition was signed by a majority of the electors of the adjacent territory; and from the brief of counsel for defendant in error it would seem that this was his only contention.

There is nothing in § 5832, which gives to boards of education of cities of the first class authority to attach to

the city territory outside of the city limits and adjacent thereto, for school purposes, which requires that the journal should show that evidence was produced to prove that the petition for such attachment was signed by a majority of the electors of the territory to be attached. The requirement of the law is that the petition shall be signed by a majority of the electors, nor that it should appear upon the journal that evidence was produced to prove that it was so signed. It must exist as a fact that the petition is signed by a majority of the electors before the board has power to make the attachment. It is the duty of the board, then, to issue an order attaching the territory, and to have the same entered upon the journal. The journal, as it appears in this record, shows that the order approving the petition and attaching the territory as named in the petition, was made, and this was by the clerk entered upon the journal. There was no evidence whatever offered by the defendant to show that this petition was not signed by a majority of the electors of the attached territory.

Was it necessary, in such a case, for the journal of the board of education to show that evidence was produced proving that the petition was signed by a majority of these electors; or was it necessary for the plaintiff to prove as a fact in the district court that the petition was so signed? We think not.

The statute gives the board of education power to make the attachment to the city, for school purposes, of adjacent territory, upon a petition signed by a majority of the electors thereof. The board, in this case, did have a petition presented to it. It did act upon the petition. And it did make an order attaching this territory to the city for school purposes, and the order was entered

upon the journal.   What more can be required to make a *prima facie* showing of the validy of this order?   And if nothing, then the *prima facie* showing becomes absolute, unless there is something presented to overcome it, which was not done in this case.

The law presumes the validity and regularity of the official acts of public officers within the line of their official duty, as it does the legality of the acts of private persons; and this presumption obtains until overcome by proof, as to all acts involving the performance of ministerial or administrative duties, except in cases where it is sought to take away personal rights of a citizen or deprive him of his property or place a charge or lien thereon.   None of these exceptions appear in this case. It is simply a question whether this territory is a part of one school district or of another—purely a public question, in which no private or property rights are involved.

As to the presumption to be indulged in favor of the validity of the acts of persons in the performance of private or corporate duties, it is said by that able jurist, Mr. Justice Story, whose decisions are replete with authorities in support thereof, in the case of *Bank of United States v. Dandridge*, 12 Wheaton, 441, that:

"By the general rules of evidence, presumptions are continually made in cases of private persons of acts even of the most solemn nature, when those acts are the natural result or necessary accompaniment of other circumstances.   In aid of this salutary principle, the law itself, for the purpose of strengthening the infirmity of evidence, and upholding transactions intimately connected with the public peace, and the security of private property, indulges its own presumptions.   It presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances

of the case overturn this presumption, according to the maxim, *omnia presumuntur rite et solemnitur esse acta, donec probetur in contrarium.* Thus, it will presume that a man acting in a public office has been rightly appointed; that entries found in public books have been made by the proper officer; that, upon proof of title, matters collateral to that title shall be deemed to have been done; as, for instance, if a grant or *feoffment* has been declared on, *attornment* will be intended, and that deeds and grants have been accepted, which are manifestly for the benefit of the party. The books on evidence abound with instances of this kind, and many of them will be found collected in Mr. Starkie's late valuable Treatise on Evidence. (3 Starkie's Evid., part IV. 1234, 1241, 1248, and note 1250, etc.).

"The same presumptions are, we think, applicable to corporations. Persons acting publicly as officers of the corporation, are to be presumed rightfully in office; acts done by the corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. Grants and proceedings beneficial to the corporation are presumed to be accepted; and slight acts on their part, which can be reasonably accounted for only upon the supposition of such acceptance, are admitted as presumptions of the fact."

This decision has been a leading case ever since it was written, whenever and wherever the question has been presented, and fully considered in this country as to the presumptions to be made in favor of the regularity of the acts of public officers.

In the case of *Gelpcke v. City of Dubuque*, 1 Wallace, 221, the question was as to whether or not the indebtedness on which the suit was brought had been authorized by the consent of two-thirds of the electors, as required by law. On the question the court said:

"Where suit is brought on a contract made by a city, where the laws regulating it require the consent of

two-thirds of its electors to validate debts for borrowed money, such consent need not be averred on the plaintiff's part.    If with such sanction the debt would be obligatory, the sanction will, primarily, be presumed.    Its non-existence, if it does not exist, is matter of defence, to be shown by the defendant."

In *Rankin et al. v. Hoyt*, 4 Howard, 327, the question was as to whether the appraisers, who had acted in the matter, had done so upon the request of the collector, which request was a pre-requisite to their action, the court said:

"Although it was necessary for the collector to request the appraisers to act, and no such request appears in the record, yet the legal presumption is, that the collector and appraisers did their duty, he requesting their action and they complying."

In *Ward v. Burrows*, 2 Ohio St. 242, the question arose as to the validity of a sale of land for taxes, and it was urged that the sale was invalid because it did not affirmatively appear in the auditor's record that the delinquent list was sworn to by the collector, as required by law, and on the question the court said;

"In favor of the acts of public officers, the law will presume all to have been rightly done, unless the circumstances of the case overturn this presumption; and consequently, as stated by the supreme court of the United States, in *Bank of the United States v. Dandridge*, 12 Wheaton, 70, 'acts done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter.'

"The act of a county auditor, in allowing credit and making the certificate, which could only be lawfully done after the delinquent list had been verified by the collector, is presumptive proof that the oath had been administered by the auditor to the collector."

The same doctrine was re-affirmed in *Lessee of Combs and Ewing v. Lane*, 4 Ohio St. 112.

The question was again before the supreme court of Ohio in the case of *Steamboat Northern Indiana v. Milliken*, 7 Ohio St. 384, where the question arose as to the validity of an act of the legislature which conferred judicial powers upon mayors of cities. The constitution of the state required that such an act should be passed by a vote of two-thirds of all the persons elected to each house of the general assembly.

On the question the court said:

"It is true, however, as contended by counsel for plaintiff in error, that in order to the validity of those portions of the act referred to, which establish and confer judicial powers on the mayors of cities, the act must have been passed by the concurring vote of two-thirds of all the members elected to each house of the general assembly. This, however, in the absence of all showing in the record to the contrary, we will presume to have been done; and the record is silent on the subject. It is not to be presumed that the presiding officers of the two houses of the legislature would sign and promulgate an act as duly passed into a law, unless it had received the vote which the constitution requires."

See also in support of the conclusion we reach, *Downing v. City of Miltonvale*, [Kansas], 14 Pac. Rep. 281; *City of Seattle v. Doran*, [Wash.] 32 Pac. Rep. 105; *Mathews v. Buckingham*, 22 Kan. 166.

There being nothing to show that this petition was not signed by a majority of the electors of the attached territory, the presumption necessarily follows that it was so signed, and validates the attachment.

This territory having been attached to the city for school purposes, did the county superintendent have authority to detach it? Section 5760 gives the county superintendent the power, and makes it his duty, to divide the county into a convenient number of school districts,

and to change such districts when the interests of the inhabitants thereof require it, under certain regulations prescribed in the section.   Does this give him power to change the boundary of a school district of a city of the first class, where outlying territory has been attached thereto for school purposes?   A city of the first class, by § 5831, constitutes a separate school district, and by § 5832, as we have seen, the board of education of such school district of a city of the first class has power to attach adjacent territory, lying outside of the city.   These latter provisions, we think, are a limitation upon the general authority given to a county superintendent by § 5760; and although § 5760 is not, in its terms, limited to country districts, it must be so held to have been within the intention of the legislature, in order to give full effect to § § 5831 and 5832.   As to the boundaries of city school districts, it was evidently the intention of the legislature that the boundary of the city should be the boundary of the school district, excepting that the board of education might determine to take in outside adjacent territory upon proper application.   This application was not to be presented to the county superintendent, nor does the section providing for it authorize or require the county superintendent to perform any duty whatever in the premises.   The application is to the board of education of the city, and it determines the question.   It would be useless to say that the board of education of a city could attach adjacent territory and that "such territory shall, from the date of such order, be and compose a part of such city for school purposes only," as is provided by the section giving authority for such attachment, if the county superintendent could immediately turn around and detach the attached territory.

Sections 5760, 5831 and 5832 of our statutes were

substantially adopted from the school law of Kansas, there being no amendments in the adoption here in any particular which affects the question before us; and in the case of *Stewart v. Adams*, [Kan.], 23 Pac. Rep. 122, the supreme court of that state held that territory outside of the limits of a city could not be attached to the city school district by order of the county superintendent, but could be attached only in the manner prescribed by the section of the statute of that state which is the same as § 5832 of the statutes of this territory.

Now if the general section giving the county superintendent power to form school districts and to change the boundaries thereof could not be held, as against the other provisions, to give the county superintendent power to attach outlying territory to a city for school purposes, it must necessarily follow that such provision could not give the superintendent power to detach territory that had been properly attached.

We hold, therefore, that the territory in question having been once legally attached to the city of Pond Creek for school purposes, the county superintendent had no authority whatever to detach it, and the district court should have enjoined her from any further interferance in the matter.

The judgment of the court below is reversed, and remanded with directions to enter judgment making the injunction perpetual at the costs of defendant.

McAtee, J., who presided in the court below, not sitting; all the other Justices concurring.