## *In re* INITIATIVE PETITION NO. 23, STATE QUESTION NO. 38.

No. 4289.   Opinion Filed October 8, 1912.

Rehearing Denied November 19, 1912.

(127 Pac. 862.)

1. **CONSTITUTIONAL LAW—Amendment of Constitution—Submission to Electors—Appeal From Secretary of State.** The appeal from a decision of the Secretary of State to the Supreme Court under the provisions of chapter 107, Sess. Laws 1910-11, p. 235, is a transference of the proceeding to this court for a trial **de novo**, and it has jurisdiction to hear and determine the same.

2. **SAME.** Under the provisions of chapter 107, Sess. Laws 1910-11, p. 235, an appeal being taken, this court secures jurisdiction of the Secretary of State by virtue of the notice served as provided for therein, and, on finding an initiative or referendum petition sufficient, it may by its own mandate compel said officer to comply with statutory requirements.

3. **SAME—Initiative or Referendum—Evidence.** The names attached to an initiative or referendum petition regularly filed in the office of the Secretary of State, sufficient in number and for the purpose of having the question therein contained submitted at an election, are presumed to be the signatures of legally qualified citizens and electors of the state, and that the post offices and places of residence given therein are correct, and to defeat the submission of said question, the burden is on the one protesting, to produce evidence sufficient to overcome this presumption, and the mere fact that of letters addressed to all the signers of the said petition at post offices given thereon, above ten per cent.

were returned to the writer undelivered, or that the circulators of the petition in their affidavits attached thereto set forth more than one county as the residence of the signers of some of the different pamphlets, or that they failed or neglected in a number of instances to legibly write or typewrite the names of the signers of the said petitions on the back thereof, will not be held sufficient, in the absence of other proof, to overcome such presumption and establish that the signers of the said petition were not at the time they signed the same citizens and legal voters of the **state.**

(Syllabus by the Court.)

In the matter of the Initiative Petition No. 23, State Question No. 38. Judgment rendered.

*Orville T. Smith,* for protestants.

*Lewis P. Mosier,* for petitioners.

DUNN, J. This case presents an appeal as provided for by chapter 107, p. 235, of Sess. Laws 1910-11.. January 26, 1912, there was filed in the office of the Secretary of State Initiative Petition No. 23, State Question No. 38, which sought to submit a proposed constitutional amendment entitled, "A bill entitled an act proposing a new section to the Constitution of the state of Oklahoma, to be in lieu of section 31, art. 6, creating a State Board of Agriculture, providing qualifications and duties of members and the manner of electing same." The petition was circulated and filed in the said office on April 25, 1912, containing 41,454 signatures. On the 4th day of May, 1912, a protest to the said petition was filed by Marl Woodson, and on a hearing had thereon the Secretary of State found that sufficient evidence had been introduced in support of the contentions of the protestant to compel him to sustain the protest and find the petition insufficient. The statute above cited provides that the decision of the Secretary of State on a protest filed to such a petition shall be subject to appeal to the Supreme Court, and that the cause shall have precedence over all others therein. It is made the duty of appellants to serve notice upon the Secretary of State, in writing, of such appeal, and it is the duty of the said Secretary to immediately transmit all papers and documents on file in his office relating to such petition to this court. The appeal has been

duly had, and the protestant, raising the question of the jurisdiction of this court to entertain the appeal, makes two contentions: First, that the Legislature lacks the power and authority to authorize an appeal to this court from the decision of the Secretary of State on the exercise by him of the administrative or legislative power exercised in hearing and passing upon the issues raised by this protest; and, second, that should it be determined that an appeal in fact does not lie, but that the action in transferring to this court, under the authority given providing for an appeal, is in fact a transfer of the proceedings to this court for a trial *de novo,* then this court is without jurisdiction to entertain it for the reason that it could render no judgment in the case which it could enforce, and the argument is made that judicial power cannot be exercised under such circumstances. Before considering the case on its merits, it is essential, therefore, that we first determine the question of our jurisdiction.

In the case of *In re Petition No. 3,* known as the Woman's Suffrage Petition, 26 Okla. 487, 109 Pac. 732, in the absence of a challenge by either party in this court, it was assumed that an appeal would lie from the action of the Secretary of State, and the court took appellate jurisdiction and rendered judgment upon the errors which were asserted existed in the action of the Secretary. The question, however, was raised in a recent case involving Initiative Petition No. 21, State Question No. 36, commonly known as the Aiken Bill, and without an opinion being written, this court on objection being made to its jurisdiction, considered the matter and came to the conclusion that the proceeding. in this court, while denominated by the statute an appeal, was in fact a proceeding *de novo,* and that the petition and protest and other documents were filed here for the purpose of hearing evidence thereon precisely as they were filed in the office of the Secretary of State. The case of *United States v. Ritchie,* 17 How. 525, 15 L. Ed. 236, is cited and seems in point on this question. Therein the Supreme Court of the United States had before it for consideration an appeal from a decree of the District Court of the Northern District of California, involving proceedings taken before certain commissioners appointed to set-

tle private land claims in California under the Act of March 3, 1851, 9 St. at L. 631. The commissioners, after hearing proofs in the case before them, ordered the title confirmed in the claimants. Thereafter a transcript of the proceedings before the board with their decision was filed with the clerk of the United States District Court of the Northern District of California. On a hearing had before the said court, the decision of the board of commisioners was confirmed, and the cause was taken on appeal to the Supreme Court of the United States. On the appeal there taken, a motion was made to dismiss the same by reason of the alleged lack of jurisdiction of the Dictrict Court to entertain an appeal from the board of commissioners for the reason that the said board was not organized as a court and lacked authority to exercise judicial power, and hence an appeal would not lie from it to the court. Considering this objection, the Supreme Court of the United States said:

"It is also objected that the law prescribing an appeal to the District Court from the decision of the board of commissioners is unconstitutional, as this board, as organized, is not a court under the Constitution, and cannot, therefore, be invested with any of the judicial powers conferred upon the general government. *Am Ins. Co. v. Canter,* 1 Pet. 511 [7 L. Ed. 242]; *Benner v. Porter,* 8 How. 235 [13 L. Ed. 119]; *United States v. Ferreira,* 13 How. 40 [14 L. Ed. 42]. But the answer to the objection is that the suit in the District Court is to be regarded as an original proceeding, the removal of the transcript, papers, and evidence into it from the board of commissioners being but a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal. We must not, however, be misled by a name, but look to the substance and intent of the proceeding. The District Court is not confined to a mere re-examination of the case as heard and decided by the board of commissioners, but hears the case *de novo* upon the papers and testimony which had been used before the board—they being made evidence in the District Court—and also upon such further evidence as either party may see fit to produce."

This case is cited approvingly and followed in a number of later state and federal cases, and, so far as our investigation goes, the doctrine therein announced seems never to have been departed from. We hold, therefore, in accordance therewith, that the

jurisdiction taken under the so-called appeal by this court is not appellate in its character, but that on the Secretary of State transmitting to the clerk of this court the petition, protest, and papers and documents on file in his office relating thereto, the case was transferred to this court for an original investigation and hearing, and the evidence and proceedings are to be taken *de novo.* This holding on our part is in consonance with the doctrine that, where a statute is susceptible to two reasonable constructions, under one of which it would be constitutional, and the other would render it invalid, it is the duty of the court to give such construction as will sustain, rather than one which will destroy, the statute. *Rakowski v. Wagoner,* 24 Okla. 282, 103 Pac. 632.

On the question as to whether the court could take jurisdiction by reason of the fact that it had before it no party or parties upon whom its judgment could operate, or, in other words, that it lacked the power to enforce any judgment which it might render, it is to be observed that, on an appeal being taken, section 2 of chapter 107, Sess. Laws 1910-11, provides for notice being served on the Secretary of State, who is thus brought into this court and rendered subject to the jurisdiction thereof, and any orders or judgment rendered, involving the performance of any duty on his part, may be enforced against him, and this fills the measure demanded for the exercise of judicial power. In other words, upon holding a petition valid, and upon the remission to the Secretary of State of the papers and documents relating to such petition, it would then, under section 3680, Comp. Laws 1909, be his duty to notify the Governor, in writing, whose duty then is to issue a proclamation setting forth the substance of the measure and the date of the vote thereon. Herein, in accord with the terms and intent of the statute, is afforded a complete remedy and procedure for carrying it out.

This brings us to a consideration of the case on its merits A vast amount of evidence was taken before the Secretary of State covering a period of time approximately three months. This is presented to us in the form of two bound volumes of record of about 1,800 pages. Accompanying this record are original peti-

tions, over 2,000 in number, and about 4,500 envelopes which appear to have been sent through the United States mail and returned to the writer. This evidence, counsel for both parties have agreed, shall be introduced, taken, and considered by the court in the determination of the issues. It appears that there were cast at the general election in 1910, for the highest state officer, 247,666 votes. The number of genuine signatures necessary to initiate an amendment to the Constitution based on this vote is 37,150. The petition presented to us contains 41,454 signatures, or 4,304 more than sufficient to initiate the measure if the signatures are genuine and the petition otherwise valid. Counsel for protestants assert that 527 signatures appearing on the petition are by mark or thumb print, 746 names appear more than once, 417 names, with no post-office address given, twenty names where the affidavit verifying the same was written on a separate sheet, and twenty names where the affidavit was sworn to in the state of Kansas. The foregoing, it is contended by protestant, are not subject to be counted as valid signatures to the petition because of the defects mentioned. The total thereof amounts to 1,730, which, if this contention on the part of counsel were conceded, would still leave 2,574 names on the petition more than enough to require the submission of the question. So that, if this were the only objection made to the petition, the evidence, giving it the full weight claimed, would be inadequate to destroy the petition. Under these circumstances, therefore, it will not be necessary to consider for any purpose the evidence adduced on these propositions unless the other objections eliminate a sufficient number of names, which, added to these, would make a sum larger than the excess number secured.

This leaves for our consideration the averment and the contention that there were returned to the writer 4,500 undelivered letters, purporting to have been sent to signers of the petition, and 9,120 names which it is claimed did not give, either in the petition or the affidavit, the county of which the signer was a resident, and the contention that there are 5,390 names not verified as required by the statute. If either one of these claims is sustained, and the

force of the objection made thereunder held good, the petition must fall for want of a sufficient number of qualified signers.

The statute under which the petitions are prepared and which sets forth the form thereof is section 3674, Comp. Laws 1909, and reads as follows: "The form of initiative petition shall be substantially as follows:" Here then follows the form addressed to the Governor of Oklahoma in which the petitioners are required to recite that the undersigned are citizens and legal voters of the state of Oklahoma and of a certain county or city, and that each for himself said that he had personally signed the petition and was a legal voter of the state of Oklahoma and of the said county or city, and that his residence and post-office was correctly written after his name. Then follows the measure to be submitted.

Taking for consideration the three objections in the order which they are given, it is to be observed that it is contended by counsel for protestant that, because 4,500 envelopes addressed to the apparent signers of this petition at the address as given by them were returned to the writer, therefore this should be considered as conclusive evidence without being supplemented in any particular that the parties who signed the petition were not legal voters of the state of Oklahoma, and therefore not qualified as petitioners, and that these names should be deducted from the total number of signatures received; or that the failure of delivery of the letter showed that the address given was wrong, therefore equal to no address, and that for this reason the name should not be counted. To this we cannot agree. We do not hold, however, that the returned envelopes in cases of this character would not in any instance or for any purpose be considered. There is no proof introduced before us to show that the names signed to the petition were forgeries nor that any other fraud of any kind was practiced in securing them. If such had been the case, or had a wholesale number of letters properly addressed to the apparent signers of the petitions to the post-office addresses given thereon been returned, this evidence might then supplement other evidence sufficient to cause such general discredit to be thrown upon the petition as to augment the weight

of proof to be given these returned envelopes. Or if, for instance, a witness should testify concerning a signer of a petition that he lived at a certain post office, and another witness testified that he did not, the fact 'that a letter properly addressed and sent to him by United States mail was not delivered, but was returned to the writer, might, by a trier of facts, be considered for the purpose of determining on which side lay the preponderance of evidence. In cases such as these, returned envelopes might have weight, but, standing alone, in our judgment they are insufficient to impeach the validity of the signatures to the petition. Qualified signers might in many instances have been from home and failed, or, if at home, neglected to get their mail, or they may have moved away leaving no address—common contingencies well known, and which would all tend to reduce the weight to be accorded these returned envelopes as evidence.

On the proposition presented by the 5,390 names not verified, the statute provides (section 3676, *Id.*):

"Each and every sheet of every such petition containing signatures shall be verified on the back thereof, in substantially the following form, by the person who circulated said sheet of said petition, by his or her affidavit thereon. and as a part thereof: State of Oklahoma, County of ———, ss.—, I, ——— being first duly sworn, say: (here shall be legibly written or typewritten the names of the signers of the sheet) signed this sheet of the foregoing petition, and each of them signed his name thereto in my presence; I believe that each has stated his name, post-office address, and residence correctly, and that each signer is a legal voter of the state of Oklahoma and county of ——— or of the city of ——— (as the case may be). (Signature and post-office address of affiant.) Subscribed and sworn to before me this ——— day of ———, A. D. 19—. (Signature and title of officer before whom oath is made, and his post-office address."

Under the claim made in this case, it is insisted that the different persons who circulated the said petition failed to legibly write or typewrite correctly the names of the signers of the petition, and it is contended that, because of the fact that the names as copied by the circulator of the petition were not copied legibly or did not exactly correspond with the name as it appeared on the face of the petition, therefore such

signature was invalid. Or, as counsel put it, the said affidavit constitutes the proof of the qualification of the signers of the petition, and their right to be counted as such signers depends upon the accuracy with which the circulator carries out the duties prescribed in the foregoing section. Here, again, under the situation presented by this petition, we are not able to concur with counsel. The petitions on their face show that to a very great extent they have been circulated generally among all classes of people and evidently have been signed by them on the street, in the shop, and at the farm, as well as where writing materials and convenience coincided. Nearly all the pamphlets have been signed with ordinary lead pencils, and, while it may be conceded that, in the instances cited by counsel, the party circulating the petition failed to legibly copy within his affidavit the name as written, this, in the absence of any other proof of disqualification of the signer, in our judgment is not sufficient for us to hold that he was not a legal voter of the state of Oklahoma. The consideration of the balance of this proposition is in a later paragraph and will not be here noted.

The same observation is entirely applicable to the names which it is contended did not give, either in the petition or in the affidavit, the county of which the signer was a resident. This claim arises on the following state of facts: Virtually none, or comparatively few, of the pamphlets contained upon their face, with the names of the signers, the name of any county. Therein was given merely the name and post-office address, and, if a city, the street number of the signer. But in a number of the affidavits of the circulators appear the names of several counties, so that they read that the petitioners had signed their names in the presence of the circulator, and that he believed each had stated his name, post-office address, and residence correctly, and that each signer was a legal voter of the state of Oklahoma, and of the county of ——— and ——— and ———, apparently indicating that the signers were residents of two, and in some instances more than two, counties. The objection which is here sought to be raised is met by the fact that the post-office address given would fix the locality in which any particular signer lived,

so that on investigation he could be located, and that while it is manifestly true that a legal voter of the state of Oklahoma must be such voter in some particular county, yet the mere failure to accurately designate the county in the affidavit of the circulator would not in our judgment serve to establish that the signer was not such legal voter of the state, and this is the substantial thing to be disproven.

In dealing as we have above with the objections which have been urged to this petition, we believe that we are carrying out the policy of this law in the very spirit intended by the people of this state in adopting it. The right of direct legislation in the people must be administered by the officers charged with that duty in such manner as to make it operative. If technical restrictive constructions are placed upon the laws governing the initiation and submission of these measures, the purpose and policy of the people in establishing the same will be entirely defeated, and instead of becoming an effective measure for relief from evils, under which they have heretofore suffered, there will be naught but an empty shell and a continuation of the conditions for which relief in this manner has been sought. The people who circulate a petition to submit for the consideration of their fellow citizens, constitutional and statutory provisions for the most part are unquestionably animated by a purpose which to them and the signers thereof, at least, appears good. Those who circulate the petition will necessarily be drawn from the ranks of volunteers or those who, for a very small consideration, call attention to their fellow citizens to the measure proposed, and solicit their interest therein. Necessarily even with the best safeguards that can be thrown around the circulation of petitions, where such a large number of names are required, inaccuracies and technical departure from prescribed forms are certain to occur every time a petition is circulated. The people who sign the petitions often, if not generally, lack both convenience and the best writing materials to distinctly, legibly, and permanently attach their names thereto. All of these things are proper to be noted and taken in consideration in the administration of this law. It can be made effective or defeated by the officers charged with its administra-

tion, and it is our duty to sustain it, rather than destroy, if it can be accomplished within the law. The presumption is that petitions which are circulated, signed, and filed are valid. People interested as the circulators of these petitions, and the others who sign them, are acting in the capacity of legislators. They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity, and when so acting the law presumes the validity and legality of their acts, and even though it should be claimed that they were acting simply in a private capacity, until overcome by proof, their acts, involving the performance of ministerial or administrative duties, such as those performed in the circulation and signing of these petitions, are presumed to be legal and not fraudulent.

Such is the holding of the Supreme Court of the Territory of Oklahoma in the case of *Watkins v. Havighorst*, 13 Okla. 128, 74 Pac. 318, following the case of *Board of Education v. Boyer*, 5 Okla. 225, 47 Pac. 1090, wherein the court in the syllabus said:

"The law presumes the validity and regularity of the official acts of public officers within the line of their official duties, as it does the legality of acts of private persons, and this presumption obtains until overcome by proof as to the acts involving the performance of ministerial or administrative duties, except in cases where it is sought to take away personal rights of a citizen or deprive him of his property, or place a charge or lien thereon."

The statute provides (section 3675, Comp. Laws 1909):

"Each initiative petition and each referendum petition shall be duplicated for the securing of signatures, and each sheet for signatures shall be attached to a copy of the petition. Each copy of the petition and sheets for signatures is hereinafter termed a pamphlet. On the outer page of each pamphlet shall be printed the word 'warning' and underneath this in ten point type the words, 'It is a felony for any one to sign an initiative or referendum petition with any name other than his own or knowingly to sign his name more than once for the measure or to sign such petition when he is not a legal voter. * * * ' "

The presumption above noted is further strengthened by the stringency of the provisions of this act. People are not presumed on mere conjecture, with no semblance of proof, to have com-

mitted felony by wholesale, especially with the act denouncing it staring them right in the face. These petitions, therefore, and the signatures thereto, are presumed to be valid, and the presumption obtains on the filing of the objections in the office of the Secretary of State that those who have signed them are legal voters of the state of Oklahoma, and this is the one provision that is the *sine qua non,* the substantial material element necessary in every case to constitute a valid signature, and the burden of proof to overcome this presumption should be and is, in every instance, upon the protestant, and, in the absence of any evidence of fraud, forgery, or other improper or wrongful conduct in securing the signers to the petitions sufficient to throw discredit upon the entire petition or upon a sufficient number, the same, in keeping with the presumption above noted, will be held valid. We do not mean to hold that the circulator's affidavit can be dispensed with, but that technical defects therein will not destroy the petition. Nor is the conclusion to which we have here come wanting in sanction in the statute. Section 3694, Comp. Laws 1909, contained in the act along with the other provisions of this law, provided as follows:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

Therefore, the fact, standing alone, that letters addressed to parties at the post offices given were returned in no greater number than here shown, or that more than one county was named as the residence of some of these petitioners, or that in transcribing the names the circulators of the petition failed to legibly write the same, all fall within the category of clerical and technical errors, and do not prevent the end aimed at from being attained, and such errors, under the mandate of the statute, it is our duty to disregard.

Under these circumstances, on the evidence and the objections presented to us, it is our finding and judgment that the petitions are valid under the form as required by the statute, and bore the signatures of a sufficient number of citizens and legal voters of the state of Oklahoma to require the submission of

the question involved to the qualified electors of the state at the next general election, and it is ordered that the clerk of this court shall transmit all papers and documents on file in his office relating to such petitions to the Secretary of State, who is directed to conform to the requirements of the law in accordance with this opinion.

All the Justices concur.