## In re STATE QUESTION No. 138, INITIATIVE PETITION No. 89.
## MILBURN et al. v. STATE TAXPAYERS ASS'N et al.

No. 16878—Opinion Filed Jan. 12, 1926.

Rehearing Denied March 23, 1926.

(Syllabus.)

**1. Statutes — Initiative Petition — Sufficiency of Filing—Indorsement on Copy Immaterial.**

The copy of the petition containing a proposed law to be initiated, filed in the office of Secretary of State, bearing the indorsement: "Prepared and filed by the State Taxpayers Association, Campbell Russell, Secretary, Bristol Hotel, Oklahoma City," is not void because not in strict compliance with section 6631, Comp. Stats. 1921, providing that "When a citizen or citizens desire to circulate a petition initiating a proposition of any nature, * * * such citizen or citizens shall, when such petition is prepared and before the same is circulated or signed by electors, file a true and exact copy of same in the office of Secretary of State," since the law does not require the copy of such petition so filed to bear any indorsement whatever.

**2. Same—Necessity for Signatures in Persons' Own Handwriting.**

Where the signatures to an initiative petition, all appear in the handwriting of one person, and it is shown that they were not written by the persons whose signatures they purport to be, such signatures are not in compliance with section 6651, Comp. Stats. 1921, and cannot be considered as legal signatures to such petition.

**3. Same—Verification of Petition by Circulator.**

An initiative petition which is not signed or sworn to by the person who circulated

said petition, does not substantially comply with section 6629, Comp. Stats. 1921, and said petition must be disregarded.

### 4. Same — Omission of Post Office Addresses.

Where an initiative petition contains certain signatures with the post office addresses omitted therefrom, said signatures are not in compliance with section 6625, Comp. Stats. 1921, and must be disregarded.

### 5. Same—Intent of Statute — Street Addresses not Indispensable.

The aim of the statute requiring correct addresses of the signers of an initiative petition is to enable a protestant of the petition to trace the signer for the purpose of determining his qualification to sign the petition, and if this can be reasonably and fairly done, the requirements of the statute will have been met, although the street and house number of the petitioner, when living in an incorporated city, may not have been given.

### 6. Same—Validity of Petition Circulated by Minor.

Since the Constitution and statutes governing the initiative and referendum do not define the qualifications of those eligible to circulate a petition for the signatures of voters, in the absence of any claim, allegation, or proof of fraud or irregularity, the names thus procured will not be excluded upon the ground that the petition was circulated by a person who had not reached the age of majority.

### 7. Same—Validity Unaffected by Fact that Circulator was Compensated.

In the absence of any allegation or proof of fraud or corruption, the names of voters on an initiative petition will not be excluded therefrom upon the ground alone that the circulator of the petition to procure such names was paid a fair and reasonable compensation for his services in circulating such petition.

Appeal from Order of Secretary of State.

In the matter of State Question No. 138, Initiative Petition No. 89. From a ruling of the Secretary of State overruling the protest of L. J. Milburn et al. to petition filed by the State Taxpayers Association, the protestants appeal. Affirmed.

S. W. Hayes, D. A. Richardson, and A. W. Gilliland, for protestants and appellants.

Campbell Russell, for respondents and petitioners.

PHELPS, J. On May 28, 1925, there was filed in the office of Secretary of State a copy of a certain initiative petition entitled:

"State Question No. 138, Initiative Petition No. 89; An act providing for the ascer-

taining of the average ad valorem tax rate in this state and requiring that gross production tax rates shall conform and be proportionate thereto."

And on August 26th there was filed in the office of Secretary of State petition pamphlets purporting to contain the names of 45,436 legal voters of the state of Oklahoma, ordering that such proposed law shall be submitted to the legal voters of the state for their approval or rejection at the next general election held throughout the state. Protest as to the legality and sufficiency of the petition was duly filed, and upon hearing the Secretary of State overruled the protest and found the petition legal and sufficient, from which ruling and finding this appeal is prosecuted.

The objections to such petition are presented in protestants' brief under several separate and distinct heads or divisions, and at the risk of making this opinion unusually voluminous we shall take up protestants' assignments of error or objections to the petition in the order in which they are presented and dispose of the questions therein raised one by one, in the hope that the procedure and operation of our initiative and referendum law as found in the Constitution and statutes may be made plain and easy of interpretation and application by those who seek to avail themselves of its privileges and benefits. Before proceeding, however, to a discussion of the specific questions raised in protestants' brief, in the interest of clarity, it might be well to refer first to the legal lights by which the pathway we travel in arriving at the conclusions we reach in this opinion is illuminated. In amplifying the provisions of our Constitution providing for the initiative and referendum the Legislature has laid down in chapter 50, Comp. Stats. 1921, a complete code for the application and operation of the initiative and referendum provision of the Constitution, and in section 6652 thereof has said:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

And in Re Initiative Petition No. 23, State Question No. 38, 35 Okla. 49, 127 Pac. 862, this court, in an opinion written by former Chief Justice Dunn, has laid down the rule by which many of the questions raised in the case at bar must be disposed of.

In that case the sufficiency of the petition was attacked, and it appears that in order to ascertain whether the persons whose

names purported to be signed to the petitions were residents of the places given in the petitions as their post office addresses, letters were mailed to each signer thereof and 4,-500 letters were returned undelivered; and that in 9,120 names neither in the petition nor affidavit was the county given of which the signer was a resident, and that 5,390 names were not verified as required by the statute. These objections were all overruled, and in the body of the opinion the court used the following language:

"The petitions, on their face, show that to a very great extent they have been circulated generally among all classes of people, and evidently had been signed by them, on the street, in the shop, and at the farm, as well as where writing materials and convenience coincided. Nearly all the pamphlets have been signed with ordinary lead pencils, and, while it may be conceded that, in the instances cited by counsel, the party circulating the petition failed to legibly copy within his affidavit the name as written, this, in the absence of any other proof of disqualification of the signers, in our judgment, is not sufficient for us to hold that he was not a legal voter of the state of Oklahoma. * * *

"In dealing as we have above with the objections which have been urged to this petition, we believe that we are carrying out the policy of this law in the very spirit intended by the people of the state in adopting it. The right of direct legislation in the people must be administered by the officers charged with that duty in such manner as to make it operative. If technical restrictive constructions are placed upon the laws governing the initiation and submission of these measures, the purpose and policy of the people in establishing the same will be entirely defeated, and instead of becoming an effective measure for relief from evils, under which they have heretofore suffered, there will be naught but an empty shell and a continuation of the conditions for which relief in this manner has been sought. The people who circulate a petition to submit for the consideration of their fellow citizens, constitutional and statutory provisions for the most part, are unquestionably animated by a purpose which to them and the signers thereof, at least, appears good. Those who circulate the petition will necessarily be drawn from the ranks of volunteers or those who, for a very small consideration, call attention of their fellow citizens to the measure proposed, and solicit their interest therein. Necessarily, even with the best safeguards that can, be thrown around the circulation of petitions, where such a large number of names are required, inaccuracies and technical departure from prescribed forms are certain to occur every time a petition is circulated, The people who sign the petitions often, if not generally, lack both convenience and the best writing materials to distinctly, legibly, and permanently attach their names thereto. All of these things are proper to be noted and taken in consideration in the administration of this law. It can be made effective or defeated by the officers charged with its administration, and it is our duty to sustain it, rather than destroy, if it can be accomplished within the law. The presumption is that petitions which are circulated, signed, and filed are valid. People interested as the circulators of these petitions, and the others who sign them, are acting in the capacity of legislators. They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity, and when so acting the law presumes the validity and legality of their acts, and even though it should be claimed that they were acting simply in a private capacity, until overcome by proof, their acts, involving the performance of ministerial or administrative duties, such as these performed in the circulation and filing of these petitions, are presumed to be legal and not fraudulent. * * *

"The presumption above noted is further strengthened by the stringency of the provisions of this act. People are not presumed on mere conjecture, with no semblance of proof, to have committed felony by wholesale, especially with the act denouncing it staring them right in the face. These petitions, therefore, and the signatures thereto, are presumed to be valid, and the presumption obtains on the filing of objections in the office of Secretary of State that those who have signed them are legal voters. * * * We do not mean to hold that the circulator's affidavit can be dispensed with, but that technical defects therein will not destroy the petition. * * *

"Therefore, the fact, standing alone, that letters addressed to parties at the post offices given were returned in no greater number than here shown, or that more than one county was named as residence of some of these petitioners, or that in transcribing the names the circulators of the petitions failed to legibly write the same, all fall within the category of clerical and technical errors and do not prevent the end aimed at from being attained, and such errors, under the mandate of the statute, it is our duty to disregard."

The various rules laid down in this case have since been cited with approval and followed in a number of instances by this court as well as by the courts of California, Washington, and New Mexico, and may, therefore, be said to have become the well-established law governing the matters therein considered. Then, with these rules in mind to guide us, we will proceed to dispose of the questions presented by this appeal.

Section 6631, Comp. Stats. 1921, provides that:

"When a citizen, or citizens, desire to circulate a petition initiating a proposition of any nature, whether to become a statute law or an amendment to the Constitution, or for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, file a true and exact copy of the same in the office of Secretary of State."

The copy of the petition filed in the office of Secretary of State in the instant case bears the following indorsement:

"Prepared and filed by the State Taxpayers Association, Campbell Russell, Secretary, Bristol Hotel, Oklahoma City"

—and it is urged by the protestants that the State Taxpayers Association, not being a citizen within the contemplation of the statute above quoted, has no legal authority to put the initiative machinery into operation for the purpose of presenting the question under consideration to the voters of the state.

In support of this contention counsel for protestants cite a number of authorities defining the meaning of the word "citizen," and holding that a statute providing that upon the petition of certain **citizens** a license to sell intoxicating liquors might be granted, or that certain **citizens** may petition for a change of the boundaries of school districts, or that certain **citizens** may, by petition, call for an election for the purpose of levying school tax, or that **citizens** only may sign a referendum petition; but, as we view it, these authorities are not applicable to the facts in the case at bar and do not sustain the contention made here. They would be applicable to sustain the contention that no one except a citizen has a right to sign an initiative petition—a citizen as distinguished from a firm, organization, society, or partnership; but clearly the copy of the petition filed with the Secretary of State, showing upon its face that it was prepared and filed by the State Taxpayers Association, Campbell Russell, Secretary, Bristol Hotel, Oklahoma City," is a substantial compliance with section 6631, supra, defining what is necessary to set the initiative machinery of this state in motion, since such indorsement is surplusage and not required by law.

It is next contended by protestants that there are 848 names upon the pamphlet petitions which were not written by the persons whose names they purport to be, but were written in by another. Under the rule laid down in Re Initiative Petition No. 23, supra, the legal presumption is in favor of the genuineness of the signatures of the persons whose names they purport to be, but evidence was introduced in the case at bar sufficient, in our judgment, to overcome that presumption and to establish protestants' contention as to the invalidity of these 848 names. Section 6651, Comp. Stats. 1921, prohibits any person signing any name other than his own to any petition, and in Re Referendum Petition No. 35, 78 Okla. 47, 186 Pac. 485, it was held that such names appearing on a petition should be disregarded. Therefore, it is our conclusion that as to these 848 names there has not been a substantial compliance with the provisions of the statute, and these names must be deducted from the total number.

Protestants further complain of the pamphlet petitions circulated by Miss Laura Daugherty, containing a total of 616 names, upon the grounds that all of the persons whose signatures appear thereon did not sign the petition in her presence. Again the legal presumption is in favor of the regularity of the signatures, but Miss Daugherty herself took the witness stand and admitted that while she was circulating the petitions she worked in conjunction with her sister, she circulating some of the petitions and her sister others, and that when they were thus completed she certified to them all as having been signed in her presence. Upon her own admission clearly a portion of those signatures are invalid for the purpose for which they were intended. She testified definitely that certain pamphlets, containing 139 names, were circulated entirely by her, but admits that her sister procured quite a number of the remaining 477 names, not being able to identify the ones she procured and those her sister procured. In Re Referendum Petition No. 35, supra, in the third paragraph of the syllabus, this court said:

"A petition for referendum which is not signed and sworn to by the person who circulated said petition does not substantially comply with section 3373, Rev. Laws 1910 (which is our section 6629, Comp. Stats. 1921), and said petition must be disregarded."

And in State v. Graves, 90 Ohio St. 311, 107 N. E. 1018, in a similar case and under a similar law, the court said:

"But if the circulator knew that a signature appearing on such part of a petition is not genuine; if he knew that such signature was not written on the petition in his presence, * * * yet, notwithstanding his knowledge, he willfully, corruptly, and intention-

ally makes a false and perjured affidavit to the contrary, then such affidavit is worthless and the petition or part of petition to which it is attached does not fill the requirement of the Constitution, and the genuine signatures thereon cannot be counted, for the reason that that part of the petition lacks the affidavit required by the Constitution."

It, therefore, follows that the 477 names must be deducted from the total number.

Protestants further claim*that there were a total of 53 names which failed to appear either on the face of the petition or in the affidavit of the circulator, and object to these being counted. The evidence wholly fails, however, to disclose how many of the 53 failed to appear on the face of the petition and how many failed to appear in the affidavit of the circulator. It is very clear, however, that if any name fails to appear on the face of the petition, although it may appear in the circulator's affidavit, it cannot be counted, for the reason that no names can be counted where the petition has not been signed in person by the one whose name appears thereon. However, in the third paragraph of the syllabus in Re Initiative Petition No. 23, supra, it was held that a failure to legibly write or typewrite the names of the signers of the petition on the back thereof will not be held sufficient in the absence of other proof to overcome the presumption that the signers were at the time they signed the same citizens and legal voters of the state. In view of our ultimate conclusion herein, however, it is not necessary for us to dispose of this question.

It is next contended that there are four completed pamphlet petitions containing a total of 80 names where the notary public taking the acknowledgment of the circulator failed to attach his notarial seal, and that there are other pamphlet petitions containing a total of 200 names to which the notary public attached his seal after the petition had been filed in the office of Secretary of State, and it is insisted that none of these names should be counted; and in protestants' sixth assignment of error they complain that pamphlet petitions containing a total of 80 names should be deducted from the total number for the reason that the notary public appears to have taken the acknowledgment of the circulator on January 24, 1925, which was prior to the time the petition was filed. In our judgment, these contentions are without merit and come fairly within the contingencies provided for by section 6652, Comp. Stats. 1921, as being wholly technical or clerical errors.

Protestants further complain that in the pamphlet petitions there appear a total of

27 names with no post office addresses appearing opposite the names of the signers, which contention, under the rule laid down in Re Referendum Petition No. 35, supra, must be sustained and the 27 names eliminated.

In protestants' eighth assignment of error, to which they direct by far the greater portion of their argument in their brief, and which is probably their most important assignment of error, it is contended that the names of 5,645 signers of the petition should be eliminated for the reason that they gave various cities as their post office addresses without giving the street and house number thereof. It will be observed that the statute nowhere requires that the street and house number be given where the signer is a resident of a city, but section 6625, Comp. Stats. 1921, lays down the form of the initiative petition which shall be "substantially" followed, which form closes as follows:

"Name _____ Residence_____, Post Office_____, if in the city street and number."

It is very earnestly urged by protestants that this requirement must be followed and that unless followed such names must be eliminated. They cite many authorities, none of which, however, entirely uphold their contention, and under the rule laid down in Re Initiative Petition No. 23, supra, we cannot agree with protestants that, under all conditions the street and house number of the signer must be given in order to uphold the petition. In Re Referendum Petition No. 31, 68 Okla. 147, 172 Pac. 639, this court said:

"The aim of the statute requiring correct addresses of the signers is to enable the protestant of the petition to trace the signer for the purpose of determining his qualification to sign the petition, and when this cannot be done, on account of the procedure adopted here, the statute is not substantially complied with, and the presumption that the signatures were those of legally qualified electors is prima facie destroyed."

An examination of that authority, however, discloses that the street and house number was not under consideration there, but it appears that a great number of the signers of the petition failed to give any post office address at all and the petitions were sent from various parts of the state to H. in Oklahoma City, who filled in these post office addresses, apparently by guesswork, and this court held that that method of completing the petitions was not a substantial compliance with the statute. We, therefore, cannot conclude that this author-

ity, although cited by, quoted from, and apparently relied upon by protestants, supports their contention. We would not be understood as holding that under all conditions the petition would be valid with the street and house number omitted, particularly if the post office addresses were the larger cities, such as Oklahoma City, Tulsa, etc., where the difficulty in locating the signer without his street and house number would be great, in which case, even if not legally obliged to do so, it would certainly be the part of wisdom to include the street and house number in giving the post office address. But in the case complained of practically the whole number of petitioners failing to give the street address are from the smaller cities, such as Atoka, Fairview, Geary, Clinton, Hugo, Weatherford, Madill, Purcell, Cordell, Wynnewood, Mangum, Sayre, etc., and the record discloses that when the protestants made inquiry as to the location of the signers of the petitions in these smaller cities they had no difficulty whatever in almost all instances in locating the signer, and, indeed, it appears from the record that in many instances the houses are not numbered and in a great many instances those giving such addresses were found to be living in the country, some of them several miles from the city. To hold that a citizen and voter should be prohibited from signing an initiative petition, or to hold that his name should not be counted as such signer, merely because he lives within an incorporated city where the houses are not numbered or the streets not named, or that his post office is one within an incorporated city and he lives outside the city limits, would be, in our judgment, making a mockery of the law in order to comply with a mere technicality. We, therefore, conclude that the evidence introduced showing that the street and house number of a large number of the signers of the petition in question was not given, is not sufficient to overcome the legal presumption that the signers of said petition were at the time they signed the same citizens and legal voters of the state. We conceive it to be the duty of the public officers, charged with that duty, to enforce, interpret, apply, and administer the laws of the state as they are written, fairly and impartially, without evasion or subterfuge and without exerting an effort to find an excuse for refusing to do so, and as the initiative and referendum provisions are a substantial part of our Constitution and statutes, it is our duty, as was said in Re Initiative Petition No. 23, supra, "to sustain it rather than destroy, if it can be accomplished within the law."

Protestants further complain that in some instances minors circulated the petition to obtain the signatures, and that there was a total of 607 names thus procured, and insist that because the petitions were circulated by persons under the age of majority, these names should be eliminated. No authorities are cited, however, to sustain this contention, nor have we been able to find any, and without hesitation we arrive at the conclusion that this contention is without merit, particularly in view of the fact that there is no allegation or claim that the petitions were not otherwise properly circulated, and in the absence of any allegations, proof, or even suggestion that the petitions were otherwise irregular, we know of no law, logic, or reason why these names should be excluded merely because the petition was presented to the signers by one who had not yet attained his majority.

It is further contended by protestants that a total of 14,381 names should be excluded from the petitions for the reason and upon the grounds that it developed in the evidence that that number of names were procured by circulators of petitions who received pay for so circulating such petitions. It is admitted that a number of the circulators of the petitions received compensation for their work, but it is insisted that their pay in no sense depended upon the success of the enterprise. Using the expression of counsel for petitioner, the persons thus employed were merely "hired to furnish the legs to bring the petition to the voter." There is not the slightest claim, or even hint, that any fraud or corruption was used, and in the absence of any such we see no good reason why names of voters thus procured should be excluded solely because they were procured by persons who received reasonable compensation for their services in circulating the petition.

Finally, the record discloses that at the last general election held in this state the highest number of votes received by candidates for any office was for that of Presidenial Electors, totaling 528,420 votes. Under the law it is necessary for the petition to contain eight (8%) per cent. of the highest number of votes cast, which in this instance would be 42,273. The petitions filed herein contained the names of 45,436, persons purporting to be legal voters; from that number we must deduct the 848 names which appear to have been written by persons other than the persons whose signatures they purport to be, and 477 who did not sign the petition in the presence of the circulator who made the affidavit, and 27 who gave

no post office address at all, and to this, if we should add the 53 names. to which the protestants .object upon the grounds that such names were omitted either from the face of the petition or from the circulator's affidavit, we have a total of 1,405 names, which deducted from 45,436, the total number of petitioners, we. have remaining 44,-031, or 1,758 more than the required number of petitioners necessary to submit the question involved to a vote of the people.

It is, therefore, our conclusion, finding, and judgment that the referendum petition in question is valid and in substantial compliance with the laws of this state. It is, therefore, ordered that the clerk of this court shall transmit all papers and documents on file in his office relating to such petition to the Secretary of State, who is directed to conform to the requirements of the law in accordance with this opinion.

NICHOLSON; C. J., and HARRISON, LESTER, CLARK, and RILEY, JJ., concur.

BRANSON, V. C. J., I dissent from the law as announced in paragraphs 1 and 5 of the syllabus.

MASON, J. I dissent from paragraphs 5 and 7 of the syllabus, and the reasoning of the opinion in support thereof.

HUNT, J. I dissent from syllabus, parag. No. 1, and the reasoning of the opinion in support thereof.