STANDISH PIPE LINE CO. v. CLEVELAND COUNTY, EXCISE BOARD.

No. 30266.　June 3, 1941.

Rehearing Denied July 1, 1941.

*114 P. 2d 945.*

Mastin Geschwind, of Oklahoma City, for·plaintiff in error.

Otis Blankenship, County Atty., Cleveland County, and John E. Luttrell, both of Norman, for defendant in error.

WELCH, C. J. The taxpayer protests 1940-41 fiscal year levies against its property within and for the benefit of joint independent school district No. C-2.

It is first contended that certain orders and proceedings attaching additional territory to district No. C-2 are void and that appropriations based upon the added valuation are excessive.

If such additional territory never became a part of district No. C-2, then the additional valuations represented by such territory did not become a part of the total valuation of district No. C-2, and appropriations based upon such total valuations are excessive and should be reduced upon protest of a taxpayer owning taxable property within district No. C-2. Such excessive appropriations, though not resulting in an immediate excessive levy, certainly lead to excessive subsequent levies in the sinking fund and for that reason inquiry is well within the jurisdiction of the Court of Tax Review.

Protestant cites School District No. 65 et al. v. Board of Com'rs of Payne County, 148 Okla. 5, 296 P. 483; School District No. 84 v. Asher School District No. 112, 168 Okla. 282, 32 P. 2d 897, and others as supporting its view that the attachment proceedings are void. The Payne County Case holds that the petition to the county superintendent affirmatively shows lack of jurisdiction because of lack of sufficient number of signers. The petition herein recites that it contains a majority of the qualified electors of the annexed district. The petition contained no conditions or reservations and therefore does not offend any of the rules announced in the Asher Case, supra. The present petition appears to substantially meet the requirements of section 6860, O. S. 1931, as amended by article 9, ch. 34, S. L. 1936-37.

Complaint is made that the order of the county superintendents finding the petition sufficient is fatally defective in that it recites that they met to consider a petition of "patrons" of the petitioning district for the purpose of "consolidating" said district with district No. C-2. We think that recitation is of no importance in view of the clear purpose of the petition, and in view of the finding in the order that it is signed by a "majority of the qualified electors" residing in the district, and the further recitation that the superintendents proposed to call an election for the purpose

of letting the voters of the petitioning district determine whether said district should be annexed to district No. C-2. Nor do we think it was vital that the date of such election be set in such order.

A subsequent order of annexation was made.

Protestant contends as follows:

"4. The election is void because not held pursuant to notice of time of holding thereof as required by statute, which defect, even if not fatal in all circumstances, is fatal to the election in the case at bar, it clearly appearing that the failure to give notice of time of holding the election so prejudiced the vote that it cannot be said that a fair election was held. (At least five signers of the petition are shown to have been against the proposition voted on because they joined in appeal from the order based thereon.)

"5. The order of attachment is void in that it shows itself to be based on the result of an election called to determine whether or not the Lawnridge district should be consolidated with the Moore district and said result did not show that the majority of the votes cast were in favor of dissolving the Lawnridge district and attaching it to the town of Moore for school purposes only. Said order is void for the further reason that it fails to show the existence and ascertainment of a fact necessary to clothe the superintendents with authority to make the order, to wit: that notice in form and number and for the time required by statute had been published prior to said election."

The order of annexation appears as follows:

"We, the superintendents of Oklahoma and Cleveland counties, held an election in joint dependent district No. 6 of Cleveland and Oklahoma counties on the 11th day of June, 1940, for the purpose of determining whether to attach the aforesaid district No. 6 to joint independent consolidated district No. C-2 of Cleveland and Oklahoma counties. We found the results of the election to be 45 for consolidation and 42 against consolidating with Moore, district No. C-2. We found the election Carried

Carried        Failed

"We hereby issue an order on this the 11th day of June, 1940, attaching all of joint dependent district No. 6 of Cleveland and Oklahoma counties to joint independent consolidated district No. C-2 of Oklahoma and Cleveland counties and becoming a part of joint independent consolidated district No. C-2, Cleveland and Oklahoma counties, State of Oklahoma, for school purposes only, and we hereby declare joint district No. 6 Cleveland and Oklahoma Counties to be dissolved.

"(SEAL)

Ethel Fowler Dowell
County Superintendent of Oklahoma County

"Ralph W. Hamilson, County Superintendent of Cleveland County."

There is no proof in this record tending to show that no notice of election was given and there is nothing in the proceedings nor in this record tending toward an affirmative showing that no proper or fair election was held in compliance with law.

We think the order of annexation above quoted and the whole proceeding answer the contention that the order is void; although in one place in the order it refers to the results of the election as for and against "consolidation," that reference is sufficiently refuted by a fair consideration of other portions of the order itself, together with the whole proceedings here shown. There is nothing in the annexation proceedings, nor in the entire record, to constitute any affirmative showing that the voters were misled in casting their ballots.

In its reply brief protestant cites City of Maud v. Tulsa Rig, Reel & Mfg. Co., 165 Okla. 181, 25 P. 2d 792, and Chicago, R. I. & P. Ry. Co. v. Galyon, 179 Okla. 570, 66 P. 2d 1066, wherein this court held that certain city ordinances affirmatively showed upon their face that they were void. These cases are presented in connection with the argument that proceedings such as are here considered must affirmatively show and recite the necessary jurisdictional facts, otherwise they are void. Although those

cases contain statements substantially to the effect as here contended, an examination will disclose that there was an affirmative showing or recitation in the ordinances denying jurisdiction, and the cases do not depend upon "omissions" of recitation of jurisdictional facts.

While proceedings of the nature here considered may in some cases be so deficient in contents as to be said to be void, we do not so find these to be.

The statutes governing these proceedings do not specifically require that the record thereof contain more than here shown to have been made by the school officials and electors. Such record so made by them is certainly sufficient for a prima facie showing of the validity of the proceedings. The law presumes the validity and regularity of the acts of the public officials and proof must be offered to overcome the prima facie showing and the presumption of law. The Board of Education of the City of Pond Creek of the Territory of Oklahoma v. Boyer, County Supt., 5 Okla. 225, 47 P. 1090.

No such proof has been offered by protestant, and its contention in that connection is therefore void.

Protestant next complains as shown by quotation from its brief as follows:

"As to the alleged error in denying complaint against $5,236.80 of the appropriations for reasons set forth in count 5, being the product of 10 mills levied against property which on January 1, 1940, and until July 5, 1940, was situated in the Lawnridge district, the authority for said levy being claimed as deriving from the vote of the electors of the Moore district on March 26, 1940, protestant's complaint is based on the pleadings that said judgment and levy denies to owners of property within the Lawnridge district the equal protection of laws."

And further complaint is made in the following language:

"In Count 6 of its protest, protestant attacked $1,905.41 of the authorized expenditures on the ground that said amount depends, for financing, upon levy of tax on property in Oklahoma county purportedly authorized by the apportionment, by the Cleveland county excise board, of 4.671 mills to be levied by school districts of the class of the Moore district, being the school portion of the 15-mill limitation contained in section 9 of article 10 of the Oklahoma Constitution which is subject to apportionment by the county excise board."

Those questions may be raised in this character of case under the facts here shown for the same reasons heretofore stated. If either of the contentions are correct, there is a resultant excessive total appropriation.

The first of such complaints is effectively answered contrary to protestant's contention by Missouri-K.-T. Ry. Co. v. Cowden, 184 Okla. 260, 86 P. 2d 776, and the reasoning given in Protest of Missouri-K.-T. Ry. Co. v. Excise Board of Bryan County, 181 Okla. 229, 73 P. 2d 173, wherein it is pointed out that the taxpayers of the annexed territory are deemed to have consented or acquiesced in the taxes to be levied by the annexing district. We deem those decisions controlling.

Of the question concerning alleged excessive appropriations based upon levy and apportionment by the excise board of Cleveland county against property within Oklahoma county, the record contains the following stipulation:

"It is further stipulated and agreed that the manner of fixing the rate of tax levy for school districts lying partly in two or more counties employed by the Cleveland county excise board in fixing the rate of levy for the Moore school district is the common practice of excise boards having jurisdiction to fix rates of levy on territory within school districts lying within two or more counties, and that such manner of making levies has been the practice in the State of Oklahoma for a long period of time, that manner of making levies being that the excise board fixing the rate of levy notifies the county clerk of its county of the rate of levy fixed by it; that the county clerk of

said county then notifies the assessor having jurisdiction to extend on the tax rolls taxes against property in said school districts in a different county, the rates so certified to him by said county clerk."

No statute is cited by either party which specifically prescribes details and method to be followed by the taxing officials in the levy of taxes for school districts lying in two or more counties. The only law called to our attention which in any wise governs is section 9, art. 10, of the Constitution, as amended in 1933. That constitutional provision authorizes the excise boards of the several counties to apportion the 15 mills limit of levy between the subdivisions thereof to be made against the property within each county. There is no showing here that such limit of levy as fixed by the Oklahoma county excise board has been exceeded by the levy of the present tax here levied by or at the instance of the proper officials of school district No. C-2. School district officials are given authority of law to levy taxes for school purposes for their respective districts, and we are not favored with citation of any legal rule which prohibits the method employed herein by the school officials of district No. C-2. Protestant has failed to show wherein such district has acted without legal authority or in violation of law.

The judgment of the Court of Tax Review is in all things affirmed.

CORN, V.C.J., and GIBSON, HURST, and ARNOLD, JJ., concur.