## ST. LOUIS–SAN FRANCISCO RY. CO. v. SATTERFIELD, County Treasurer.

Circuit Court of Appeals, Eighth Circuit. June 21, 1928.

No. 8008.

1. **States** ⊜⊸9—Oklahoma acquired all political rights of other states when admitted to Union.

When admitted to statehood, Oklahoma entered Union on basis of equality with, and acquired all political rights enjoyed and exercised by, other states.

2. **United States** ⊜⊸3—After Oklahoma's admission to Union, United States held Ft. Sill military reservation as proprietor, unhampered in existing use thereof.

After admission of Oklahoma to Union, United States held Ft. Sill military reservation as proprietor, subject only to limitation on state that United States should remain unhampered in use to which it was then devoting property.

3. **United States** ⊜⊸3—State may surrender to federal government part of its governmental authority.

It is within the power of the state to surrender to the federal government a portion of its governmental authority.

4. **United States** ⊜⊸3—Statute held not to vacate state's sovereignty over military reservation acquired by national government before state's admission to Union (Const. art. 1, § 8, cl. 17; Laws Okl. 1907–08, c. 29).

State of Oklahoma surrendered to national government exclusive jurisdiction of lands acquired for purposes referred to in Const. art. 1, § 8, cl. 17, by Laws Okl. 1907–08, c. 29, but did not vacate its sovereignty over property otherwise acquired, such as Ft. Sill military reservation, owned by federal government before such state's admission to Union.

5. **United States** ⊜⊸3—States can be held to have ceded their authority to national government only as to lands acquired in manner indicated by federal Constitution (Const. art. 1, § 8).

It is only as to lands acquired by the national government in the manner indicated by Const. art. 1, § 8, that states are to be construed as having ceded their authority to such government.

6. **Taxation** ⊜⊸20—Oklahoma did not surrender right to tax railroad property in military reservation by statute ceding authority over it to United States with reservation of such right (Laws 1913, c. 52; Comp. St. Okl. 1921, § 7531).

State being authorized to attach such conditions as it sees fit in ceding dominion over military reservation to national government, so long as not inconsistent with use of land for intended purpose, state of Oklahoma did not surrender right to levy and collect taxes on railroad's property in Ft. Sill military reservation by Laws 1913, c. 52; Comp. St. Okl. 1921, § 7531, ceding authority over such reservation to United States, but reserving right to tax such property.

7. **Schools and school districts** ⊜⊸103(1)—It should be presumed that statute authorizing attachment of military reservations to school districts was observed in levying school tax on property therein (Laws Okl. 1924, Sp. Sess. c. 128).

In absence of pleadings and proof to contrary, trial court correctly ruled that it should be presumed that Laws Okl. Sp. Sess. 1924, c. 128, authorizing attachment of military reservations to adjoining independent school districts for school purposes, was observed in assessing and levying school tax on railroad property in Ft. Sill reservation.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Actions by the St. Louis–San Francisco Railway Company against Iona C. Satterfield, County Treasurer of Comanche County, Oklahoma. To review a judgment for defendant on certain counts of the petition, plaintiff brings error. Affirmed.

M. K. Cruce, of Oklahoma City, Okl. (E. T. Miller, of St. Louis, Mo., and Ben Franklin, of Oklahoma City, Okl., on the brief), for plaintiff in error.

V. P. Crowe, of Enid, Okl., and R. J. Ray, of Lawton, Okl. (Edwin Dabney, of Oklahoma City, Okl., and W. T. Dixon, of Lawton, Okl., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

DAVIS, District Judge. The St. Louis–San Francisco Railway Company filed in the Western district of Oklahoma, two suits to recover certain taxes assessed for the fiscal year commencing July 1, 1924, and ending June 30, 1925, and paid by plaintiff under protest. The taxes were paid in two installments, the first on December 29, 1924, and the second on June 11, 1925. The first suit was filed on January 19, 1925, and the second suit was filed July 1, 1925. The petition in each case contained several counts, and the cases were consolidated for the purpose of trial. The judgment was adverse to plaintiff on the tenth count of the first suit, known as case numbered 3067 in the court below, and on the thirteenth count of the second suit, known as case numbered 3164. A single writ of error brings the judgment of the trial court on these two counts here for review.

The cases were submitted upon an agreed statement of the facts. The stipulation bearing upon the issue now before this court is as follows:

"Upon the tenth cause of action in case No. 3067, and the thirteenth cause of action in case No. 3164, it is agreed that for said year the following named levies were made through the county excise board as herein described against the property of this plaintiff company of a total valuation of $259,289, all situated within the boundary limits of Ft. Sill military reservation in said Comanche county, Oklahoma, to wit:

That the state of Oklahoma levied.. 2.5 mills
Comanche county levied......... 8.75 mills
Chandler township levied......... 3.04 mills
Lawton township levied.......... 3.5 mills
Lawton school district levied...... 20.0 mills

—and that the amounts of taxes levied and assessed against the property of plaintiff situated in said Ft. Sill military reservation by reach of such levies and paid by the plaintiff under protest was as follows:

State tax ........................ $ 648.22
County tax ...................... 2,268.78
Chandler township tax............. 517.16
Lawton township tax............. 312.08
Lawton School Dist................ 5,185.78

Total amount so levied and collected $8,932.02

"It is further agreed that the Ft. Sill military reservation is the only property of the government of the United States within the state of Oklahoma where a graded or public school has been or is being provided or maintained by the state of Oklahoma or any of its subdivisions; that the only other military reservation within the state of Oklahoma is Ft. Reno, where soldiers and troops are stationed, where a remount station is maintained, and that on the Ft. Reno military reservation there are approximately 20 children of school age. That within the state of Oklahoma the federal government owns the Platte national park and several Indian reservations.

"It is further agreed that the Ft. Sill military reservation was set aside and designated as such before the state of Oklahoma was created, and that the land constituting the Ft. Sill military reservation was not purchased since the admission of the state of Oklahoma into the Union, but was owned by the United States by cession from France many years before Oklahoma became a state.

"It is further agreed that the plaintiff acquired title to its right of way within the said reservation in the following manner: The Act of Congress approved February 10, 1903 (32 Stat. 821), grants a right of way across this reservation to the Oklahoma City & Western Railway Company (upon such lands as may be determined and approved by the Secretary of War). This railroad was located and built under license of May 14, 1902, and under the Act of Congress of March 2, 1899, said latter act being found in volume 30 U. S. Stat. at Large, page 990 (25 USCA §§ 312–318). The title to said railroad and the property of the above-named company having passed by deed dated July 18, 1907, to the St. Louis & San Francisco Railroad Company, the Secretary of War under date of April 1, 1901, under the authority vested in him by the first-mentioned act of Congress, approved the location of the line of railroad as it now exists, and the plaintiff derived its title to the said property which is the subject of this suit from the St. Louis & San Francisco Railroad Company by deed."

The plaintiff asserts two propositions. (1) There does not exist any power or authority in the state of Oklahoma, or Comanche county, to levy any tax against any of plaintiff's property situated in the Ft. Sill Military Reservation. (2) Even if plaintiff is in error as to its first contention, the levy of taxes for the Lawton school district is invalid.

[1-3] The first proposition raises the question as to whether the state of Oklahoma has surrendered to the federal government authority to levy and collect taxes upon property located in this military reservation. When Oklahoma was admitted to statehood, on November 16, 1907, it entered the Union on a basis of equality with all other states. It thereby acquired all rights of a political nature that are enjoyed and exercised by the other states of the nation. Pollard's Lessee v. Hagan, 3 How. 212, 11 L. Ed. 565; Coyle v. Smith, 221 U. S. 559, 31 S. Ct. 688, 55 L. Ed. 853. When statehood was granted, the government then owned the military reservation, and imposed no restrictions upon the new state in connection with its use of this property. After the admission of Oklahoma, the government held the reservation as a proprietor, subject only to the limitation upon the state that the United States should remain unhampered in the use to which it was devoting the property. But it is within the power of a state to surrender to the federal government a portion of its governmental authority. Ft. Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264. The plaintiff asserts that this has been done with reference to the Ft. Sill Military Reservation.

[4] It is contended that this was accomplished by an Act of the Legislature of Oklahoma enacted on April 6, 1908. Chapter 29, Session Laws 1907–08. This act is as follows:

"Section 1. The consent of the state of Oklahoma is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this state, required for sites for custom houses, post offices, arsenals, forts, magazines, dock yards, military reserves, forest reserves, game preserves, and national parks or other needful public buildings whatever, or for any other purpose for the government.

"Sec. 2. Exclusive jurisdiction in and over any lands so acquired by the United States shall be, and the same is hereby, ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this state; but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands.

"Sec. 3. The jurisdiction ceded shall not vest until the United States shall have acquired the title of said lands by purchase, condemnation or otherwise; and so long as the said lands shall remain the property of the United States, when acquired as aforesaid, and no longer, the same shall be and continue exempt and exonerated from all state, county and municipal taxation, assessment, or other charges which may be levied or imposed under the authority of this state."

Clause 17, section 8, article 1, of the Constitution of the United States, referred to in the above statute, provides that:

"The Congress shall have power * * * to exercise exclusive legislation in all cases whatsoever, over such district, * * * and to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."

The above statute of Oklahoma by its express terms was enacted for the purpose of enabling the United States to acquire land in the manner, for the object, and with the exclusive jurisdictional result mentioned in the above section of the Constitution. But the Ft. Sill military reservation had been acquired by the government long prior to the passage of this statute. The government owned the land comprising the reservation before and at the time Oklahoma was admitted into the Union. So that in no sense can it be said that this property was acquired with the consent of the Legislature of the state in which it was located. The statute is necessarily prospective in its operation. It authorizes the government to secure such land in the state as it may desire for its purposes. As to all such acquisitions, the state by this statute surrenders to the national government exclusive jurisdiction. But the state of Oklahoma did not by this statute vacate its sovereignty over property acquired in some other manner by the government. The leading case of Ft. Leavenworth Railroad Co. v. Lowe, supra, is authority for the proposition that the power of a state to exercise political jurisdiction over territory within its borders is not to be taken from it by implication, but must find its basis in an express enactment.

[5] This same case also enunciates another

rule that finds universal application in the decisions of the courts; That is, that it is only as to lands acquired in the manner indicated in section 8, art. 1, of the Constitution that the states are to be construed as having ceded to the government their authority. This is the language of the opinion:

"The consent of the states to the purchase of lands within them for the special purposes named is, however, essential, under the Constitution, to the transfer to the general government, with the title, or political jurisdiction and dominion. Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor. The property in that case, unless used as a means to carry out the purposes of the government, is subject to the legislative authority and control of the states equally with the property of private individuals."

See, also, Williams v. Arlington Hotel Co., 22 F.(2d) (C. C. A. 8) 669.

The Supreme Court in that case was dealing with the right of the state of Kansas to tax the property of a railroad in the Ft. Leavenworth military reservation. This reservation, like the one in the case here, was owned by the government prior to the statehood of Kansas. The court determined that the state had this right, because its statute ceding political jurisdiction over the reservation retained to the state the right to tax the property of certain corporations located on the premises of the government.

[6] So the conclusion is inevitable that neither the above statute of Oklahoma, nor the fact that the national government owned the land, acquired otherwise than in compliance with the constitutional provision, at the time of the admission of the state into the Union, resulted in the acquisition by the national government of complete political jurisdiction over the reservation. However, the state of Oklahoma did cede authority over this reservation by a later statute, known as chapter 52 of the Session Laws of 1913 (section 7531, Comp. St. Okl. 1921). This act is as follows:

"Section 1. That exclusive jurisdiction be, and the same is hereby ceded to the United States over all the territory now owned by the United States and comprised within the limits of the military reservation of Fort Sill, in Comanche county, and Fort Reno in Canadian county, as declared from time to time by the President of the United States, and over such lands as may hereafter be ac-

quired for the enlargement of said reservations: Provided, however, that the state of Oklahoma reserves the right to serve civil or criminal process within said reservations in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in said state but outside of such cessions and reservations; Provided, further, that the state of Oklahoma reserves the right to tax railroad companies and other corporations and their franchises and property on said reservations; and provided, further, that the jurisdiction herein ceded shall continue no longer than the United States shall own and hold said reservations for military purposes."

The provision of this statute, retaining to the state the right to tax property, other than that of the government, has been held to be valid. The state in ceding dominion over reservation to the government was authorized to attach such conditions, as it saw fit, so long as they were not inconsistent with the use of the land for the intended purpose. Ft. Leavenworth Railroad Co. v. Lowe, supra, Chicago, R. I. & P. Railway Co. v. McGlinn, 114 U. S. 543, 5 S. Ct. 1005, 29 L. Ed. 270; Benson v. U. S., 146 U. S. 330, 13 S. Ct. 60, 36 L. Ed. 994; Palmer v. Barrett, 162 U. S. 403, 16 S. Ct. 837, 40 L. Ed. 1016. It follows that the state of Oklahoma did have the right to levy and collect taxes on defendant's property in the Ft. Sill military reservation.

[7] The other contention of the plaintiff is that in any event that portion of the taxes levied and collected for the Lawton school district was invalid. This court, in St. Louis-San Francisco Railway Co. v. Bledsoe, 7 F.(2d) 364, held that chapter 57, Session Laws of Oklahoma 1921, authorizing the board of education of Lawton to attach the Ft. Sill Reservation to the Lawton school district, was invalid as being a special law, contrary to the state Constitution. Thereafter the Legislature of Oklahoma passed a general statute (Laws Sp. Sess. 1924, c. 128, p. 152), so as to meet the criticism that had been directed against the former act. The purport of this act was to permit, with the consent of the Secretary of War, any military reservation in the state to be attached to an adjoining independent school district for school purposes, by the county superintendent of education, upon the petition of the commanding officer of the reservation, and with the consent of the board of education of the independent school district.

The validity of this statute is not attacked in this case. The plaintiff based its

case solely on the broad proposition that the military reservation and its property thereon were subject alone to the laws of the United States, and that the state was without authority to legislate in respect thereto. The pleadings tender no issue as to the validity of the statute of 1924, and raise no question as to the manner in which the school tax was assessed and levied. But at the argument and in the briefs it was asserted that there was no showing that the necessary steps had been taken to attach the reservation to the school district as provided by the statute, and hence the tax was not properly assessed and collected. In the absence of both pleadings and proof to the contrary, the trial court correctly ruled that it should be presumed that the statute had been observed in assessing and levying the school tax. Board of Education v. Boyer, 5 Okl. 225, 47 P. 1090; Tonini v. Board of County Commissioners, 100 Okl. 246, 229 P. 263; Knox County v. Ninth National Bank, 147 U. S. 91, 13 S. Ct. 267, 37 L. Ed. 93.

This record is free of error, and the judgment is affirmed.