## UNITED STATES ex rel. SOY SING v. CHINESE INSPECTOR IN CHARGE AT PORT OF NEW YORK.

### No. 209.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

James C. Thomas, of New York. City, for appellant.

Robert E. Manley, Acting U. S. Atty., and Walter H. Schulman, Asst. U. S. Atty., both of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The applicant is a Chinese named Sheung Loy, who sought admission to the United States under the provisions of section 1993 of the Revised Statutes (8 USCA § 6) as the son of Low Gui Tai, who is an American citizen. The sole issue was that of his parentage.

The applicant is 32 years old, and arrived at the port of New York June 28, 1928. At the hearing before the Board of Special Inquiry, he, his alleged father, and an identifying witness, Soy Sing, testified. He failed to establish his right to enter to the satisfaction of the Board, and its decision denying him admission was affirmed on appeal. The denial was based largely on disregarding the testimony of the alleged father as not worthy of belief because it was in conflict with some of the testimony he had given at Seattle the year before when his right to re-enter this country from China was in issue.

As is apparently the custom in these hearings, the testimony took a wide range, and went into rather minute details concerning the village from which the applicant came, the number of houses, rows of houses, location of the house in which he lived, number and location of rooms, windows, and doors, as well as the number; names, description, and relationship of occupants. This no doubt gave the examiners some basis for forming a judgment as to the truth or falsity of the testimony directly bearing on the ultimate fact in issue, for, by a comparison of the testimony given on subjects which each would be likely to know about if the claimed relationship was a fact, some indication could be obtained by the examiners as to the credibility of the witnesses. We are confined to a review which will determine whether or not the applicant has been accorded a fair hearing, United States ex rel. Fong Lung Sing v. Day (C. C. A.) 37 F. (2d) 36; yet this does not alone require that the applicant have an adequate opportunity to produce evidence in support of his claimed right to enter and to meet evidence to the contrary, but requires that all the evidence taken shall be fairly considered, weighed, and applied to decide the real issue rather than to put a premium on the ability to remember alike the inconsequential details of a Chinese village concerning which the examiners know nothing and have no means of knowing, in case of discrepancies, which witness was right and which was wrong. Of course, such discrepancies may have an important bearing on the credibility of witnesses and so weaken their testimony that the vital facts are left unproved and exclusion is warranted. Mason v. Tillinghast (C. C. A.) 27 F.(2d) 580. But we may pass over that part of this case quickly, for the testimony of the witnesses at the hearing before the Board of Inquiry in New York was, as stated in the memorandum of the Board of Review, "in practical agreement." The testimony of the identifying witness, Soy Sing, was of little consequence, for he was born in California and first met the father of the applicant in Canton, China, when the

witness was on a visit there in 1922, and testified that at that time the father introduced the witness to his two sons, one of whom was the relator, in a fruit store in Canton.

■ Low Gui Tai, the alleged father, had been examined in Seattle in October, 1927, by a Board of Special Inquiry, when he was seeking readmission as an American citizen on his return from China.

At New York he testified that he was born in San Francisco June 23, 1875, and, when it was called to his attention that he testified in Seattle that he was born June 4, 1874, said the latter date was correct. At New York he testified that during his last trip to China (he had gone there first as a small boy and returned to this country in 1900) he had no occupation, and, when told that he had testified in Seattle that he had conducted a fruit stand in China which had failed said that was so, and explained his answer that he had no occupation by saying: "Our custom is, when we fail in a business, we do not mention it." He testified that his brother Low Gui Hoy, returned to China in C. R. 8. When told that in Seattle he said that his brother returned in C. R. 6 he testified: "I forgot the exact year, about whether it is one or the other." In New York, he testified that he had been married just once, and that his only wife was Jung Shee, a little over 50 years old, with natural feet, a native of Kar Heung Village; that he married her December 7, 1894; that they had three sons, of whom the applicant, Sheung Loy, is the oldest; and that he was at home when all three of his sons were born. He was immediately asked the following questions and gave the following answers:

"Q. How long before you came to the U. S. was your third son born? A. I returned to the U. S. in K. S. 26, about the 8th month, and my son was born the following year, the second month.

"Q. Then, he was not born when you were at home? A. No, I was not home.

"Q. You have previously testified before this Board that all three of your sons were born while you were at home? A. I made a mistake.

"Q. In your testimony given at Seattle under date of September 13, 1927, contained in Seattle file 7555/12—5, you stated that your son was one or two years old when you returned to this country, that is your third son, the youngest? A. I do not remember saying that. (Witness shown photograph attached to triplicate form 430, dated New York, N. Y., January 19, 1912, contained in New York file 6/542F.)

"Q. Do you recognize the photograph of the person now shown to you? A. I cannot recognize him. (File in which said photograph is contained relates to one Low Poy Dew, and was shown to said witness in Seattle and he identified the photograph as that of himself. At this time, he is unable to recognize the photograph.)

"Q. Who is to be your identifying witness in this case? A. Soy Sing.

"Q. How long have you known the identifying witness? A. A long time.

"Q. Is he present here in this building at the present time? A. Yes, he is in the other room.

"Q. Is he a native of your home village? A. No.

"Q. What village does he come from, do you know? A. I have forgotten the name of his village where he came from. We came together in K. S. 26. That is how I know.

"Q. Was he arrested and tried the same time as you were? A. Not tried the same time, but in the same place, we were at Malone together.

"Q. Has he ever been in your home village at any time? A. No.

"Q. Then, he knows nothing at all about your sons, has never seen your son. Only what you have told him? A. Yes, he knows my sons at Canton City when he made his trip in C. R. 11, to China at the fruit store.

"Q. How did he know that they were your sons, by him just meeting them at Canton City? A. Soy Sing wrote me a letter while he was in China in C. R. 11, that he wanted to see me. So, I was at this fruit store at Canton City and I met him there and my two sons, Sheung Loy and Sheung On, met him there too.

"Q. Who paid your passage back to this country on your return trip in 1927. A. Myself.

"Q. But, this identifying witness, whom you had previously mentioned, does not know anything about your village or your house in particular, does he? A. No.

"Q. And he knows nothing about your wife? A. No, he does not."

At Seattle the witness testified as follows:

"Q. What family have you? A. Wife, Jung Shee, she has natural feet, 47 or 48 years old, she is from the Kar Heung village, about 3 lis west from our village.

"Q When did you marry her? A. I married her when I was 20 years old and had three sons before I came to this country.

"Q. Did you ever have any other wife than Jung Shee? A. Yes, Jung Shee died and I married again. I was in this country when she died. It was a few years before I returned to China in R—5. She had bubonic plague.

"Q. What family did you have by Jung Shee? A. Three sons, no daughters. Low Shung Low, 30 years old, born 10th month and 10th day. I don't know what year. I was 22 years old, and he is not married. He works in a fruit stand. Low Shung On is the second son, 28 years old, born in the 8th month and 2nd day. I can't remember the year, he is not married, he also works in a fruit stand. Low Shung Lai is the third son, 26 years old, he is not married, he also works in fruit stand.

"Q. How does it happen that none of your sons are married at the age that they are? A. It was on account of financial trouble.

"Q. Isn't it a fact that you have none of these sons and are not telling the truth about them, the same as you did about your brother? A. These boys are my sons.

"Q. Describe your second wife? A. Fung Shee, 30 years old, she has natural feet, she is from the Gut Hung village 8 lis west from our village and she is now living in my house in the Gong Hing village.

"Q. What family have you had by your second wife? A. No children.

"Q. Is your wife now an expectant mother? A. No.

"Q. Were you home when all three of your sons were born? A. Yes.

"Q. How long before you came to the U. S. was your third son born? A. He was one or two years old when I returned to this country.

"Q. Then he must be more than 26 years old as you came back to this country 27 years ago? A. He was about one year old when I came to this country.

"Q. Whose photo is this (Ex photo in N. Y. file 6/542—F, said file relating to Low Dew Poy). A. That is myself."

Although this witness testified at Seattle on his return from China in 1927 that none of his three sons were married and attributed that fact to financial trouble, he answered, when asked at New York in 1928 the following question:

"How was this house occupied when you were last in China in 1927 (meaning the house his family occupied)? My son, Sheung Loy, and his family occupied the sleeping rooms on the large door side."

The examination then continued:

"Q. What is Sheung Loy's wife name? A. Moy She, about a little over 32 years, native of the Hoy Yung village.

"Q. When and where was your alleged son, Sheung Loy, married? A. Gong Hing village, C. R. 5—7—1 (July 30, 1916).

"Q. Has he any family? A. One son, named Low Quok Hee, age 7, born in C. R. 11—2—12 (March 10, 1922).

"Q. And what does your son, Sheung Loy, work at? A. In Canton City, in the fruit business.

"Q. What is your second son's name? A. Sheung On, 30 years born in K. S. 25—8—2 (September 6, 1899).

"Q. Is he married or single? A. Married.

"Q. What is his wife's name? A. Goon She.

"Q. How old is she? A. Same age as my son, 30, she is a native of the Hor Yung Village, they have one son, named Chew Dok.

"Q. How old is the son? A. 5 years.

"When was he born? A. C. R. 13—3—3 (April 6, 1924).

"Q. When was your son, Sheung On, married? A. C. R. 7—8—10 (September 14, 1918).

"Q. Describe your next son? A. Sheung Lai, 28, born in K. S. 27—2—2 (March 21, 1901).

"Q. What is his wife's name? A. Goon She.

"Q. How old is she? A. 28, native of the Hor Yung village.

"Q. When and where were they married? A. C. R. 9—9—20 (October 31, 1920).

"Q. Have they any family? A. One son, Chew Sing.

"Q. How old is he? A. 3 years, born in C. R. 15—12—21 (January 24, 1927).

"Q. Is that the only child they have? A. Yes, that is all."

■ Of course all this does show without a doubt that Low Gui Tai did not tell the truth when he testified in Seattle that he had been married twice and described both of his wives or at New York when he testified that he had been married but once. Likewise he

testified falsely at one place or the other when he said in Seattle, when on his way back from China where he must have learned the fact, that none of his sons were married and in New York that all were. At both hearings, however, he testified that he was the father of the applicant, and none of the contradictory evidence he gave directly indicates the contrary; yet it does indicate his general untruthfulness, his willingness to testify falsely, and leaves his credibility so impaired that to hold the Board of Inquiry unfair in failing to rely upon it would be an unwarranted invasion of the right of the examiners to be exclusive judges of the credibility of the witnesses who testify before them, and, having reasonable grounds for their conclusion, to decide that this witness was unworthy of belief. This left the testimony of the applicant virtually unsupported, and it is impossible to say that the Board was unfair in holding it to be less than enough. See Ex Parte Jew You On (D. C.) 16 F.(2d) 153. It should be remembered that this appeal is not a trial de novo.

Judgment affirmed.