Hugh B. MCCORMICK, III, Ancillary Administrator, and Edana Cochran, Personal Representative of the Estate of Paul C. Cochran, deceased, Plaintiffs,

v.

C.E. THURSTON & SONS, INC., Defendant.

Civil Action No. 4:97cv37.

United States District Court, E.D. Virginia, Newport News Division.

May 28, 1997.

Jonathan A. Smith–George, Robert Randolph Hatten, Donald Neal Patten, Patten, Wornom & Watkins, Newport News, VA, Richard Steven Glasser, Glasser and Glasser, Norfolk, VA, Peter A. Kraus, Baron & Budd, Dallas, TX, for Hugh B. McCormick, III, Ancillary Administrator, and Edana Cochran, Personal Representative of the Estate of Paul. C. Cochran, deceased, plaintiff.

William W. Nexsen, Stackhouse, Rowe & Smith, Norfolk, VA, Louis P. Herns, James G. Kennedy, Hood Law Firm, Christine L. Companion, Hood Law Firm, Charleston, SC, for C.E. Thurston & Sons, Inc., defendant.

### ORDER AND OPINION

MacKENZIE, District Judge.

This matter came before the Court pursuant to Plaintiffs' motion to remand. Plaintiffs argue that neither of the grounds stated in Defendant's notice of removal properly establish federal jurisdiction over the instant action. After hearing argument in the matter and duly considering the parties' submissions, this Court agrees. Accordingly, Plaintiffs' motion to remand is hereby **GRANTED.**

### I.

This action arose out of the alleged wrongful death of Paul C. Cochran, a former navy officer allegedly exposed to asbestos while serving aboard the *USS NIMITZ*. As a result of his exposure, Mr. Cochran apparently contracted mesothelioma that eventually proved fatal. His wife, Edana Cochran, through her ancillary administrator, has brought suit against C.E. Thurston & Sons, the distributor of asbestos products aboard the *NIMITZ*. Her claim was filed pursuant to the Jones Act, the Death on the High Seas Act and the general maritime law alleging liability for a failure to warn.

The action was originally filed in the Circuit Court for the City of Newport News. Defendant filed a notice of removal claiming, in the alternative, that federal jurisdiction was appropriate under the "federal enclave" clause of the U.S. Constitution, or pursuant to 28 U.S.C. § 1442 that provides for "federal officer" removal.

### II.

When a party attempts to remove a case from state court pursuant to 28 U.S.C. § 1441(a), they incur the burden of establishing proper jurisdiction within the federal system. *See Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir. 1994). As stated by the Fourth Circuit, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Id.* (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). And [b]ecause removal raises significant federalism concerns, [a court] must strictly construe removal jurisdiction. *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). Finally, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Id.* (citing *In re Business Men's Assur. Co. of America,* 992 F.2d 181, 183 (8th Cir.1993)).

### III.

In their motion to remand, Plaintiffs' argument is twofold. First, Plaintiffs argue that federal jurisdiction does not exist, as alleged in the notice of removal, under the "federal enclave" provision of the United States Constitution. Second, they argue that federal jurisdiction is also not proper, as alleged, pursuant to the "federal officer" provisions of 28 U.S.C. § 1442.

## A. "Federal Enclave" Jurisdiction

To begin, federal enclave jurisdiction grows out of Article I, section 8, clause 17 of the United States Constitution which provides:

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places Purchased by the Consent of the Legislature of the State in which the Same shall be, for other Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful buildings.

Accordingly, suits regarding property purchased in the manner stated above are to occur in the federal courts of the United States.

However, Plaintiffs argue that this "federal enclave" provision of the Constitution applies only to *lands* owned by the United States. Thus, contrary to the contentions of Defendant, a navy vessel, standing alone, cannot be considered a "federal enclave."

Indeed, in the vast majority of situations, a federal enclave is created only when the federal government acquires exclusive jurisdiction over land with the consent of the state or commonwealth containing the land. *See United States v. Johnson*, 994 F.2d 980, 984–85 (2d Cir.1993). The amount of authority suggesting that this ground for federal jurisdiction should extend beyond torts that occur on federally procured *lands* is imperceptible. Even when considering federal jurisdiction surrounding military properties, the overwhelming weight of authority focuses on land. *See Id.* at 984 (Brooklyn Naval Yard is a federal enclave); *DeKalb County v. Henry C. Beck Co.*, 382 F.2d 992, 994–95 (5th Cir. 1967) (federal enclave jurisdiction extends to land owned by the Veterans Administration); *Stokes v. Adair*, 265 F.2d 662 (4th Cir.1959) (Fort Leavenworth Military Reservation is a federal enclave supporting jurisdiction); *St.*

*Louis–San Francisco Ry. Co. v. Satterfield*, 27 F.2d 586, 588–89 (8th Cir.1928).

Arguing to the contrary, Defendant has relied upon a case where individuals exposed to asbestos while working on naval vessels were subject to federal jurisdiction under this provision. *Fung v. Abex Corp.*, 816 F.Supp. 569, 571 (N.D.Cal.1992). However, that court's basis for jurisdiction is difficult to discern. It is unclear whether the *Fung* court was emphasizing the submarines identity with federal lands,[1] or going against the weight of authority and declaring the vessels themselves "federal enclaves." Accordingly, this Court rejects any suggestion that the *USS NIMITZ* is or ever was a "federal enclave" sufficient to establish jurisdiction in this case.

In the alternative, Defendant claims that although the *USS NIMITZ* was built, and Plaintiff began his duty, at the Newport News Shipyard, the decedent's service aboard the vessel took him elsewhere. The vessel was commissioned in May of 1975 and deployed soon thereafter.[2] Accordingly, Defendant argues, some of decedent's exposure to asbestos would have logically occurred while the vessel was docked at the Norfolk Naval Station and several other Naval stations around the world. All of which, they argue, are "federal enclaves."

Plaintiffs counter arguing that the motion for judgment alleges the entirety of decedent's exposure to asbestos products occurred while aboard the *USS NIMITZ*, not in any part while on land at various military installations around the world.

It is clear that the *NIMITZ* was docked at the Norfolk Naval Base for at least part of the decedent's tour. It is also clear that this facility was considered a "federal enclave" during the relevant period. *See Rivers v. Woodfield*, 1990 WL 303324 (E.D.Va.1990). However, all the evidence before the Court, and Defendant has proffered none to the contrary, suggests that decedent's exposure has no connection to governmental lands.

---

1. The submarines were docked at federal enclaves such as Mare Island but it is unclear where exactly Plaintiffs alleged the exposure took place.

2. The decedent's term on the *NIMITZ* lasted from 1975 to 1979.

Accordingly, federal jurisdiction based upon the "federal enclave" provision of the Constitution is, at best, doubtful and cannot support Defendant's removal. *See Mulcahey*, 29 F.3d at 151.

### B. Federal Officer Jurisdiction

■ In order for a party to properly utilize federal officer jurisdiction pursuant to 28 U.S.C. § 1442, it must show:

1. That it acted pursuant to the direction of a federal officer;

2. That it can raise a colorable federal defense to the plaintiff's claims; and

3. That a causal nexus exists between the plaintiff's claims and the acts the defendant performed under the color of the federal officer.

*Mesa v. California*, 489 U.S. 121, 124–25, 134–35, 109 S.Ct. 959, 962–63, 967–68, 103 L.Ed.2d 99 (1989).

There is no dispute over the first requirement in the matter at bar. Plaintiffs concede that Defendant acted pursuant to a federal contract when supplying products to the *USS NIMITZ*. However, Plaintiffs claim the Defendant is unable to show either of the other required elements: a colorable federal defense, or a causal nexus between Plaintiff's claim for wrongful death and any acts Defendant performed under color of the federal officer. *See Mesa v. California*, 489 U.S. at 124–25, 134–35, 109 S.Ct. at 962–63, 967–68. This Court need only consider the question of a colorable federal defense.

■ With regard to the colorable federal defense requirement from *Mesa*, the Supreme Court's decision from *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) establishes the prerequisites. Under *Boyle*, in order to succeed with the military contractor defense, a defendant must show that:

1) the United States approved reasonably precise specifications;

2) the equipment conformed to those specifications; and

3) the supplier warned the United States about any dangers in the use of the equipment that were not known to the United States.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518. Defendant argues they are entitled to the defense in the case at bar. Specifically, they claim to have satisfied all the requirements as set out in *Boyle* and offered the affidavit of Joseph Hoffman, the retired CEO and a life-long employee of C.E. Thurston & Sons, to so demonstrate.

■ Despite Defendant's arguments, in the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in "failure to warn" cases. Judge Miller set forth his ruling that the *Boyle* case did not apply in failure to warn cases back in October of 1988. *See* Order dated October 19, 1988 from *Worley v. Celotex Corp.*, C.A. No. 88–243–N. This position was subsequently adopted by the entire Court and incorporated into the Summary of Prior Rulings and Preservation of Objections Pertaining to Motions for which Oral Argument is Waived. Accordingly, Defendant has failed to demonstrate a colorable federal defense and the assertion of federal officer jurisdiction must fail pursuant to the mandate of *Mesa*.

### IV.

For the foregoing reasons, the Court finds that the jurisdictional grounds relied upon by Defendants in their notice of removal are insufficient. Accordingly, Plaintiffs' motion to remand is hereby **GRANTED** and this Court **REMANDS** the action to the Circuit Court for the City of Newport News, Virginia.

**IT IS SO ORDERED.**